IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

ESSEX COUNTY, VIRGINIA,     )
a political subdivision of the     )
Commonwealth of Virginia,     )
P. O. Box 1561     )
Courthouse Square     )
Tappahannock, VA 22560,     )
     )
     )
     Plaintiff,     )
     )
     v.     )
     )
ALBERTO R. GONZALES,     )
Attorney General of the     )     Civil Action No.
United States of America,     )
WAN J. KIM,     )
Assistant Attorney General,     )
Civil Rights Division, United States     )
Department of Justice, Washington, DC,     )
     )
     Defendants.     )
_____)

COMPLAINT FOR DECLARATORY RELIEF UNDER THE VOTING RIGHTS ACT

Essex County, Virginia, alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the
Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter
"Section 4").  This Court has jurisdiction over this action pursuant to 28
U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C.
§1973l(b).

2. Plaintiff Essex County ("the County") is a political subdivision of the
Commonwealth of Virginia and a political subdivision of a state within the
meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1).

Essex County, Virginia is located about 100 miles from Washington, DC on Virginia's Middle Peninsula just outside the Washington to Norfolk-urban crescent. The County covers 261square miles.

3. The Essex County Board of Supervisors is the governing body that formulates policies for the administration of government in Essex County.  It is comprised of four members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer.

4. Located within Essex County is the Town of Tappahannock ("the Town"). Residents of the Town are eligible to participate in town elections and in county elections.

5. In addition to the County itself, there are elected governmental units that exist completely in Essex County within the meaning of 42 U.S.C. §1973b(a)(1). One of these is the town government of Tappahannock, which is governed by a seven-member town council.  Another governmental unit operating completely within Essex County is the Essex County School Board, which became an elected body in 2005.  Members of the School Board are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors plus one at-large member.

6. Essex County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act.  42 U.S.C. §1973c.  Under Section 5, the County is required to obtain preclearance from either this Court

or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

7. Essex County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

8. According to the 2000 census, Essex County, Virginia has a total population of 9,989. Of this number, 3,879 persons (or 39%) are black and 72 (or .007%) are Hispanic. The voting age population of the County, according to the 2000 census, is 7698. Of this number, 2,848 (37%) are black. The Town of Tappahannock, according to the 2000 census, has a total population of 2,068. Of this number, 857 (41%) are black and 8 (.003%) are Hispanic.

9. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the County's voting age population is registered to vote. As of July 2005, there were 6,298 registered voters in Essex County.

10. The number of registered voters in the County has steadily risen over the last decade. In 1996, for example, there were 4,494 registered voters in the County. By 2000, the number of registered voters had grown to 5177. The number of registered voters in the County has continued to grow in the post-2000 years. As of 2006, there were 6222. Thus, from 1996 to 2006, the total number of registered voters in the County has grown by 38% (from 4,494 in 1996 to 6,222 in 2006).

11. Voter turnout in elections within Essex County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last four Presidential elections (1992, 1996, 2000, and 2004), for example, 87.4%, 74.7%, 71.3% and 69.3% of the County's registered voters turned out to vote, respectively. In the General Elections for Governor, the Essex County Board of Supervisors, and the County School Board held in November 2001 and 2005, 47.7% and 50.5% of the County's registered voters turned out to vote, respectively.

12. There are presently a total of four polling locations (and an additional central absentee voting location) located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

13. There have been black candidates in elections held for county office in each general election since 1995. In 2005, a black candidate ran unopposed and was elected to the county board of supervisors. In that same year, a black candidate and a white candidate faced off against each other for a school

4

board seat and the white candidate prevailed. A black candidate also ran in a four candidate race for Commissioner of revenue in a special election and finished second.  In 2003, three black candidates ran county-wide for sheriff and one of the black candidates was elected sheriff.  In 2001, two back candidates ran for the county board of supervisors from the North district and one of them was elected.

14. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act.  This exemption process is known as "bailout".

15. In 1982, Congress made changes in the exemption standards of the Voting Rights Act.  As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;
> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. §1973c; and
> E) the Attorney General has not interposed any objection to any proposed

voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:
A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

16. As described herein, plaintiff Essex County has fully complied with the provisions of Section 4 of the Act.

17. As a political subdivision of the Commonwealth of Virginia, plaintiff Essex County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Essex County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

18. Since 1980, Essex County has made approximately thirty-five (35) preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Of these thirty-five (35) submissions, thirty-four (34) were made by the County, and one (1) was made by the Essex County School Board.

19. Within the ten years preceding the filing of this action, Essex County has not enforced any voting changes prior to Section 5 preclearance.  Nor has the Attorney General ever interposed a Section 5 objection to any change affecting voting in Essex County since the Voting Rights Act was first enacted in 1965.  The County has never sought judicial preclearance of any voting changes in this Court.

20. Voter registration opportunities in the County are readily and equally available to all citizens.   The voter registration office for the County is located in the Essex County and School Board office complex in Tappahannock, a location that is convenient for all County residents. The voter registration office is open from 8:30 a.m. to 4:30 p.m. daily.

21. Voters in Essex County may also register by mail, and voter registration applications are available at locations convenient to voters in the County.  The opportunity to become a registered voter in Essex County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in Essex County.  While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of many registration applications.  Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Essex County has been made more convenient and available as a result of implementation of the NVRA.

22. Voter registration opportunities in the County are readily and equally available to all citizens.

23. Essex County's Voter Registration Office is staffed with a full-time Registrar and an Assistant Registrar who works two days per week.  Voters may register at the Voter Registration Office as well as at the DMV or the local social services organizations. On occasion, the General Registrar conducts voter registration at the high school and at other local functions.  For the last couple of years, the Essex County Democratic Party through their community outreach efforts, with the approval of the County's Voter registration Office, has registered students at the local high school, conducted voter registration drives at both the local Wal-Mart and at seasonal festivals held in the area.

24. Essex County has a three-member Electoral Board, appointed pursuant to Virginia state law, and the Electoral Board presently nominates a roster of persons each February to work as poll workers for a one-year term.  The Electoral Board is currently comprised of one black member and two white members.  From 2001 to the present, the Chairperson of the Electoral Board has been black. There has been at least one black member of the Electoral Board since 2001, and during the years 2002-2004, two of the three members of the County Electoral Board were black.  Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties.   No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

25. Essex County currently has 39 poll workers, of whom 15 (or 38%) are black. The percentage of black poll workers slightly exceeds the percentage of Essex County's black voting age population.

26. No person in Essex County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

27. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Essex County as a prerequisite to either registering or voting for at least the preceding ten years.

28. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Essex County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against Essex County alleging such denials or abridgments of the right to vote.

29. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

30. Essex County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Essex County are not being denied an equal opportunity to elect candidates of their choice to the County Board of

Supervisors, to the County School Board, or to the Tappahannock Town Council.

31. Federal examiners have never been appointed or assigned to Essex County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

32. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Essex County within the last ten years, neither the County nor any of its governmental units have had any occasion to take any action eliminating such activity.

33. Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."   A Notice of Intent to Seek a Bailout was published by the County Placement in The Rappahannock Times, the County's weekly newspaper on April 19, April 26, and May 3, 2006.  This Notice was also posted at all eight post offices in the County, at the County courthouse in Tappahannock, at the County library, and at the office of the General registrar of Voters.  The aforementioned Notice also advertised that a public hearing would be held regarding the bailout on May 18, 2006, at 7:00 p.m. At the May 18, 2006 public hearing, not a single member of the public appeared and thus no one spoke in opposition to the bailout or raised any questions about the County's proposed bailout.

34.   The allegations set forth in paragraphs 17 through 33, above, if established, entitle plaintiff Essex County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all

governmental units within the County from the special remedial provisions of

the Voting Rights Act.

WHEREFORE, plaintiff Essex County respectfully prays that this Court:

A.  Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C.

§1973b, to hear the claims raised in plaintiff's complaint;

B.  Enter a declaratory judgment that plaintiff Essex County and all governmental

units within the County are entitled to a bailout from the special remedial provisions of

the Voting Rights Act; and

C.  Grant such other relief as may be necessary and proper as the needs of justice

may require.

Respectfully submitted,

**For the Plaintiff ESSEX COUNTY:**

/s/ J. GERALD HEBERT_____
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 628-4673 (Office)
DC Bar No. 447676
Email: jghebert@comcast.net