IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| ESSEX COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br><br>    Plaintiff,<br><br>    v.<br><br>ALBERTO R. GONZALES,<br>Attorney General of the<br>United States of America,<br>WAN J. KIM,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | C.A. No. 1:06-cv-1631<br><br>Three-judge court<br>(RBW, MBG, RMU) |

## STIPULATION OF FACTS

This action was initiated by Essex County, a political subdivision of the Commonwealth of Virginia (hereafter "the County"). The County seeks a declaratory judgment pursuant to Section 4(a) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b.

The parties have jointly moved this three-judge Court for entry of a Consent Judgment and Decree to resolve this action. In support of that motion, the parties have entered into the following stipulation of facts. The facts in this stipulation may be received into evidence in lieu of further proof or testimony.

It is hereby stipulated, by and between the respective parties, that:

1. Plaintiff Essex County ("the County") is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of

Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). Essex County, Virginia is located about 100 miles from Washington, DC on Virginia's Middle Peninsula just outside the Washington to Norfolk-urban crescent. The County covers 261 square miles.

2. Located within Essex County is the Town of Tappahannock ("the Town"). Residents of the Town are eligible to participate in town elections and in county elections.

3 In addition to the County itself, there are elected governmental units that exist completely in Essex County within the meaning of 42 U.S.C. §1973b(a)(1). One of these is the town government of Tappahannock, which is governed by a seven-member town council, including a mayor. The mayor is elected at large every four years in a May general election that is run by the County. Town council members are also elected at large and serve staggered four-year terms. Another governmental unit operating completely within Essex County is the Essex County School Board, which became an elected body in 2005. Members of the School Board are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors plus one at-large member.

4. Essex County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

5. Essex County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General

that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

6. The Essex County Board of Supervisors is the governing body that formulates policies for the administration of government in Essex County. It is comprised of four members elected from single-member districts to serve four-year staggered terms. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer.

7. According to the 2000 census, Essex County, Virginia has a total population of 9,989. Of this number, 3,879 persons (or 39%) are black and 72 (or .007%) are Hispanic. The voting age population of the County, according to the 2000 census, is 7,698. Of this number, 2,848 (37%) are black. The Town of Tappahannock, according to the 2000 census, has a total population of 2,068. Of this number, 857 (41%) are black and 8 (.003%) are Hispanic.

8. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the County's voting age population is registered to vote. As of July 2005, there were 6,298 registered voters in Essex County.

9. The number of registered voters in the County has steadily risen over the last decade. In 1996, for example, there were 4,494 registered voters in the County. By 2000, the number of registered voters had grown to 5,177. The number of registered voters in the County has continued to grow in the post-2000 years. As of 2006, there were 6,222. Thus, from 1996 to 2006, the total number of registered voters in the County has grown by 38% (from 4,494 in 1996 to 6,222 in 2006).

10. Voter turnout in elections within Essex County (*i.e.*, the percentage of those registered voters who cast ballots) varies according to the offices up for election. In the last four Presidential elections (1992, 1996, 2000, and 2004), for example, 87.4%, 74.7%, 71.3% and 69.3% of the County's registered voters turned out to vote, respectively. In the General Elections for Governor, the Essex County Board of Supervisors, and the County School Board held in November 2001 and 2005, 47.7% and 50.5% of the County's registered voters turned out to vote, respectively.

11. There are presently a total of four polling locations (and an additional central absentee voting location) located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

12. There have been black candidates in elections held for county office in each general election since 1995. In 2005, a black candidate ran unopposed and was elected to the county board of supervisors. In that same year, a black candidate and a white candidate faced off against each other for a school board seat and the white candidate prevailed. A black candidate also ran in a four candidate race for Commissioner of Revenue in a special election and finished second. In 2003, three black candidates ran county-wide for sheriff and one of the black candidates was elected sheriff. In 2001, two

black candidates ran for the County Board of Supervisors from the North district and one of them was elected. There is also one black town council member who has been elected town-wide for at least four consecutive terms.

13. Since 1980, Essex County has made approximately 36 preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Of these 36 submissions, 35 were made by the County, and one was made by the Essex County School Board.

14. Within the ten years preceding the filing of this action, Essex County has not enforced any voting changes prior to Section 5 preclearance. Nor has the Attorney General interposed a Section 5 objection to any change affecting voting in Essex County within the past ten years. The County has not sought judicial preclearance of any voting changes in this Court.

15. Voter registration opportunities in the County are readily and equally available to all citizens. The voter registration office for the County is located in the Essex County and School Board office complex in Tappahannock, a location that is convenient for all County residents. The voter registration office is open from 8:30 a.m. to 4:30 p.m. daily.

16. Voters in Essex County may also register by mail, and voter registration applications are available at locations convenient to voters in the County. The opportunity to become a registered voter in Essex County is also available under the National Voter Registration Act (the "NVRA") at the Department of Motor Vehicle ("DMV") offices and at public assistance agencies in Essex County. While in past years most voters became registered at the County's voter registration office, the

implementation of the NVRA in Virginia over the last decade has changed the origin of many registration applications. Today, many of the County's new registrants register through applications submitted through the DMV and by mail, and the opportunities for persons to register to vote in Essex County has been made more convenient and available as a result of implementation of the NVRA.

17. Essex County has a three-member Electoral Board, appointed pursuant to Virginia state law, and the Electoral Board presently nominates a roster of persons each February to work as poll workers for a one-year term. The Electoral Board is comprised of one black member and two white members. The current Chairperson of the Electoral Board is a black female. There has been at least one black member of the Electoral Board since 2001, and during the years 2002-2004, two of the three members of the County Electoral Board were black. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

18. Essex County currently has 39 poll workers, of whom 15 (or 38%) are black. The percentage of black poll workers slightly exceeds the percentage of Essex County's black voting age population.

19. No person in Essex County has been denied the right to vote on account of race, color, or membership in a language group for at least the preceding ten years.

20. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Essex County as a prerequisite to either registering or voting for at least the preceding ten years.

21. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in Essex County, nor has the County entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds. There are no pending actions against Essex County alleging such denials or abridgments of the right to vote.

22. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

23. Essex County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Essex County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or to the Tappahannock Town Council.

24. Federal examiners or observers have never been appointed or assigned to Essex County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

25. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in Essex County within the last ten years, neither the County nor any of its governmental units have had any occasion to eliminate such activity.

26. Pursuant to 42 U.S.C. §1973b, the County has "publicize[d] the intended commencement ...of [this] action in the media serving [the County] and in the appropriate United States post offices." A Notice of Intent to Seek a Bailout was

published by the County in The Rappahannock Times, the County's weekly newspaper on April 19, April 26, and May 3, 2006. This Notice was also posted at all eight post offices in the County, at the County courthouse in Tappahannock, at the County library, and at the office of the General Registrar of Voters. The aforementioned Notice also advertised that a public hearing would be held regarding the bailout on May 18, 2006, at 7:00 p.m. At the May 18, 2006 public hearing, not a single member of the public appeared and thus no one spoke in opposition to the bailout or raised any questions about the County's proposed bailout.

27. The United States has determined that it is appropriate to consent to a declaratory judgment in this action, pursuant to Section 4(a)(9) of the Voting Rights Act. This consent is premised upon an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

28. The United States' consent in this action is based upon its own factual investigation and consideration of all of the circumstances in this case, including the views of minority citizens in the County, the fact that there are no defendant-intervenors, the affirmative steps taken by the County to increase voter participation, and the absence of evidence of racial polarization or discrimination in the electoral process within the County.

29. The Essex County General Registrar and the County Electoral Board recognize their continuing responsibility to keep voters in Essex County apprised of voting and election-related changes they make in the future. To that end, they will

continue their practice of informing each of the members of the County Board of Supervisors of each and every voting or election change that is made. In addition, they will continue to seek to publicize such changes in the local media, and will also continue their current practice of informing all voters who may be affected by any such changes.

Approved as to form and content:

For the Plaintiff ESSEX COUNTY:

*/s/ J. Gerald Hebert*
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676

**For the Defendants:**

ALBERTO R. GONZALES
Attorney General

WAN J. KIM:
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

*/s/ Christy McCormick*
JOHN TANNER
CHRISTY McCORMICK
SONYA L. SACKS
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386