IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ESSEX COUNTY, VIRGINIA,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO R. GONZALES,<br>Attorney General of the<br>United States of America,<br>WAN J. KIM,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>Defendants. | ) | C.A. No. 1:06-cv-1631<br><br>Three-judge court<br>(RBW, MBG, RMU) |

DECLARATION OF JOHN CRUMP

Pursuant to 28 U.S.C. §1746, I, John Crump, declare that:

1. My name is John Crump and I reside in Essex County, Virginia. I am the Secretary of the Essex County Electoral Board.

2. As detailed below, Essex County recently publicized the proposed settlement of the bailout action. Following this Court's December 15 order, I made arrangements for the County to publish a notice of the proposed settlement in the only local paper of general circulation, the Rappahannock Times. The notice, a copy of which is attached as Exhibit A, was published in the Rappahannock Times on December 27, 2006, January 3, 2007, and January 10, 2007. The notice published in the paper included not only a notice that the County intended to reach a settlement of the bailout, but also was accompanied by publication of the entire proposed settlement document published in the local paper, along with

the notice itself. Further, the notice also provided members of the general public with a website address from which they could download the proposed settlement document electronically.

3. On December 19, 2006, Essex County's assistant registrar of voters and I posted the notice and the settlement document at all eight post offices in the County, as well as at the courthouse, the county library, and the voting registrar's office.

4. The notice that Essex County published and posted invited the general public to call the Registrar of Voters with any questions. **Not a single person has contacted either the Electoral Board or the Voting Registrar's office concerning either the bailout or the proposed settlement of the bailout action.**

5. The recent publication of the proposed settlement of the bailout is the second notice that Essex County has published in connection with bailout. As detailed in my earlier Declaration, Essex County first publicized its intention to seek a bailout beginning in April 2006. Following widespread notice of the bailout action, and a public hearing held in May 2006 to answer questions or address concerns about bailout, no member of the general public appeared at the hearing to voice any concerns.

I declare under penalty of perjury that the foregoing is true and correct.

JOHN CRUMP

Dated: January 25, 2007.

guar- can ness orner nfor- enter 443-

I'd look over to the (practice) field and knew I should've been out there," said Hence. "Hopefully, this can be a long-term thing for me if I just keep at it."

The only other first team selection from area schools was King William's Kevin White who was selected at linebacker.

Area second team selections were Washington & Lee's receiver Jermaine Weldon and King William's Marcus Temple (running back) and Kenneth Hall (offensive tackle).

See all-state story page B1.

## Minimum Wage Issue Debated

**Continued From Page 1**

mum wage rates higher than the federal government's. If we enacted a change at odds with our decades-long, bi-partisan policy on this critical business issue, we'd jeopardize our competitive advantage and Virginia's recently awarded 'number one for business' ranking."

Earlier this year, Virginia was ranked the "Best State for Business" by *Forbes* magazine. *Forbes* criteria included the cost of labor, as well as taxes, education and regulatory climate among other criteria.

Only one southern state, Florida, currently sets its minimum wage rate higher than the federal rate, although North Carolina is scheduled to do so on January 1, 2007.

The incoming Democrat majority in the U.S. Congress, which convenes on Jan. 3, 2007, already has declared its intention to pass an increase in the federal minimum wage, pledging to do so in its first 100 hours.

"We need to use restraint when tampering with wage laws," Morgan stated. "As a former small business owner, I know from per-

rabies inoculation certificate and you must bring it with you at the time of your purchase.

Licenses can be purchased at the Essex County Treasurer's Office, 321 Prince Street, Monday through Friday from 8:30 a.m. to 4:30 p.m.

**John Lee**
**Essex County Animal Control Officer**

### NOTICE OF ESSEX COUNTY'S PROPOSED SETTLEMENT OF LAWSUIT SEEKING EXEMPTION (BAILOUT) FROM SPECIAL PROVISIONS OF THE VOTING RIGHTS ACT

Pursuant to 42 U.S.C. §1973b, Essex County gives NOTICE that it has commenced an action in the United States District Court for the District of Columbia seeking an exemption, known as bailout, under the Voting Rights Act of 1965, as amended. The bailout lawsuit was filed on September 21, 2006, and is pending before the Court.

NOTICE is also given that Essex County has reached a settlement of that lawsuit with the United States Department of Justice and that it has filed the proposed settlement with the Court. The Voting Rights Act requires that the County publicize any proposed settlement of that lawsuit and this NOTICE is intended to fulfill that requirement. A copy of the proposed settlement is available for any member of the general public at the Office of the General Registrar of Voters, located at The County Office Building, 109 N. Cross St., Tappahannock, VA 22560. Copies of this Notice and the Proposed Settlement are also being posted at the following locations: at all eight post offices in the County; at the court house in Tappahannock; and at the County library.

A copy of the proposed settlement may also be downloaded from the County's legal counsel's website: www.voterlaw.com.

Any person desiring information on the bailout or the proposed settlement may also contact the Essex County General Registrar of Voters (Larnie Hughes) at (804) 443-4611.

### KING & QUEEN COUNTY NOTICE OF PUBLIC HEARING

Pursuant to Section 15.2-2204 of the Code of Virginia, on Monday, January 8, 2007, at 7:00 p.m., the King & Queen County Board of Supervisors will conduct a joint public hearing with the King & Queen County Planning Commission in the King & Queen Courts and Administration Building, King & Queen Courthouse, Virginia, to consider the following:

**RZ06-02, Williams Contractors, Inc.** – requesting the approval of a rezoning of a 2.87-acre parcel from Limited Business (LB) to Residential – General (RG). The applicant is requesting the rezoning to build apartment buildings. The property is located on State Route 33, ... Memorial Highway, County Tax Map Parcel No. 1623-

Exhibit A

# Legal Notice

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, ESSEX COUNTY, VIRGINIA, Plaintiff, v. ALBERTO R. GONZALES, Attorney General of the United States of America, C.A. No. 1:06-cv-1631, WAN J. KIM, Assistant Attorney General, Three-judge court (RBW, MBG, RMU), Civil Rights Division, United States Department of Justice, Washington, DC, Defendants. CONSENT JUDGMENT AND DECREE - This action was initiated by Essex County, Virginia, a political subdivision of the Commonwealth of Virginia (hereafter "the County"). The County is subject to the provisions of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973c. The County seeks a declaratory judgment under Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b. A three-judge court has been convened as provided in 42 U.S.C. §1973b(a)(5) and 28 U.S.C. §2284. Section 4(a) of the Voting Rights Act provides that a state or political subdivision subject to the special provisions of the Act may be exempted from those provisions if it can demonstrate in an action for a declaratory judgment before the United States District Court for the District of Columbia that for the ten-year period prior to filing the action and during its pendency, it has both 1) complied with the Voting Rights Act, and 2) taken positive steps both to encourage minority political participation and to remove structural barriers to minority electoral influence. In order to demonstrate compliance with the Voting Rights Act during the ten-year period prior to commencement of a declaratory judgment action under Section 4(a), the County must satisfy five conditions: 1) the County has not used any test or device during that ten-year period for the purpose or with the effect of denying or abridging the right to vote on account of race or color; 2) no court of the United States has issued a final judgment during that ten-year period that the right to vote has been denied or abridged on account of race or color within the territory of the County and no States or any State or political subdivision with respect to discrimination in voting on account of race or color. 42 U.S.C. §1973b(a)(3). Finally, the County must provide public notice of its intent to seek a Section 4(a) declaratory judgment. 42 U.S.C. §1973b(a)(4). The Defendant United States, after investigation, has agreed that the Plaintiff has fulfilled all conditions required by Section 4(a) and is entitled to the requested declaratory judgment. The parties have filed a joint motion, accompanied by a Stipulation of Facts, for entry of this Consent Judgment and Decree. FINDINGS, Pursuant to the parties' stipulations and joint motion, this Court finds as follows: 1. The County is a political subdivision of the Commonwealth of Virginia, and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). 2. The Essex County Board of Supervisors is the governing body that formulates policies for the administration of government in Essex County. It is comprised of four members elected from single-member districts to serve four-year staggered terms. In addition to the County itself, there are elected governmental units that exist completely in Essex County within the meaning of 42 U.S.C. §1973b(a)(1). One of these is the town government of Tappahannock, which is governed by a seven-member town council, including a mayor. The mayor is elected at large every four years in a May general election that is run by the County. Town council members are also elected at large and serve staggered four-year terms. Another governmental unit operating completely within Essex County is the Essex County School Board, which became an elected body in 2005. Members of the School Board are elected in odd years to four-year staggered terms from the same districts as members of the County Board of Supervisors plus one at-large member. 3. The County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. 4. The County was designated as a jurisdiction subject to the special

to participate in the political process. 14. The County has engaged in constructive efforts over the years to enhance registration and voting opportunities for all of its citizens of voting age in a variety of ways. Residents of Essex County may register at the Voter Registration Office, as well as at the DMV or the local social services organizations. On occasion, the General Registrar conducts voter registration at the high school and at other local functions. For the last couple of years, the Essex County Democratic Party through their community outreach efforts, with the approval of the County's Voter Registration Office, has registered students at the local high school, conducted voter registration drives at both the local Wal-Mart, and at seasonal festivals held in the area. 15. Since the County does not record the race of its registered voters, it is unable to present evidence directly measuring minority voter participation, but the County has provided evidence of voter participation for elections since 1990. Current data show, for example, that a significant proportion of the County's voting age population is registered to vote. As of July 2005, there were 6,298 registered voters in Essex County, or approximately 81.8% of the voting age population. Turnout has been highest in the County in presidential election years. For example, in the last four Presidential elections (1992, 1996, 2000, and 2004), for example, 87.4%, 74.7%, 71.3%, and 69.3% of the County's registered voters turned out to vote, respectively. 16. The County has not engaged, within the ten years prior to the commencement of this action, in any violations of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color. 17. The County has publicized the intended commencement and proposed settlement of this action in the media and in appropriate United States post offices as required under 42 U.S.C. §1973b(a)(4). No aggrieved party has sought to intervene in this action pursuant to 42 U.S.C. §1973b(a)(4). 18. The

account of race or color within the territory of the County, and no consent decree, settlement or agreement may have been entered into during that ten-year period that resulted in the abandonment of a voting practice challenged on such grounds; and no such claims may be pending at the time the declaratory judgment action is commenced; 3) no Federal examiners have been assigned to the County pursuant to the Voting Rights Act during the ten-year period preceding commencement of the declaratory judgment action; 4) the County and all governmental units within its territory must have complied with Section 5 of the Voting Rights Act, 42 U.S.C.§1973c, during that ten-year period, including the requirement that voting changes covered under Section 5 not be enforced without Section 5 preclearance, and that all voting changes denied Section 5 preclearance by the Attorney General or the District Court for the District of Columbia have been repealed; and 5) neither the Attorney General nor the District Court for the District of Columbia have denied Section 5 preclearance to a submission by the County or any governmental unit within its territory during that ten-year period, nor may any Section 5 submissions or declaratory judgment actions be pending. 42 U.S.C. §1973b (a)(1)(A-E). In addition, to obtain the declaratory judgment, the County and all governmental units within its territory must have: 1) eliminated voting procedures and methods of election that inhibit or dilute equal access to the electoral process, 42 U.S.C. §1973b (a)(1)(F)(i) and 2) engaged in constructive efforts to eliminate intimidation or harassment of persons exercising voting rights, and to expand the opportunity for convenient registration and voting for every person of voting age, and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process.42 U.S.C. §1973b(a)(1) (F)(ii-iii). The County is required to present evidence of minority participation in the electoral process, including the levels of minority group registration and voting, changes in such levels over time, and disparities between minority group and non-minority group participation. 42 U.S.C. §1973b(a)(2). In the ten years preceding bailout, the County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by section 4(b) of the Act, 42 U.S.C. § 1973b(b), on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age residing in the state voted in the 1964 presidential election. 5. No discriminatory test or device has been used by the County during the ten years prior to the commencement of this action for the purpose or with the effect of denying or abridging the right to vote on account of race or color. 6. No person in the County has been denied the right to vote on account of race or color during the past ten years. 7. No court of the United States has issued a final judgment during the last ten years prior to the commencement of this action that the right to vote has been denied or abridged on account of race or color in Essex County, and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds during that time. No such claims presently are pending or were pending at the time this action was filed. 8. No Federal Examiners or Observers have been assigned to the County within the ten-year period preceding this action. 9. The County has not enforced any voting changes prior to receiving Section 5 preclearance during the ten-year period preceding this action. 10. All voting changes submitted by the County under Section 5 of the Voting Rights Act, 42 U.S.C. §1973c, have been precleared by the Attorney General. No Section 5 submissions by the County are pending before the Attorney General. The County has never sought Section 5 judicial preclearance from this Court. 11. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color during the ten-year period preceding this action. 12. The County does not employ voting procedures or methods of election which inhibit or dilute equal access to the electoral process by the County's minority citizens. 13. There is no indication that in the past ten years any persons in intervene in this action pursuant to 42 U.S.C. §1973b(a)(4). 18. The Essex County General Registrar and the County Electoral Board have acknowledged their continuing responsibility to keep voters in Essex County apprised of voting and election-related changes they make in the future. To that end, these local governmental officials will continue their practice of informing each of the members of the County Board of Supervisors of each and every voting or election change that is made. In addition, they will continue to seek to publicize such changes in the local media, and will also continue their current practice of informing all voters who may be affected by any such changes. Accordingly, it is hereby ORDERED, ADJUDGED and DECREED: 1. The Plaintiff, Essex County, Virginia is entitled to a declaratory judgment in accordance with Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1); 2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and Essex County, including the Essex County School Board and the Town of Tappahannock, shall be exempt from coverage pursuant to Section 4(b) of the Voting Rights Act, 42 U.S.C. §1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years. This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in 42 U.S.C. §1973b(a)(5). 3. The parties shall bear their own costs. Entered this _______day of _______________, 2006.

UNITED STATES CIRCUIT JUDGE, UNITED STATES DISTRICT JUDGE, UNITED STATES DISTRICT JUDGE, Approved as to form and content: For the Plaintiff Essex County, Virginia. /s/ J. Gerald Hebert, J. GERALD HEBERT, Attorney at Law, 5019 Waple Lane, Alexandria, Va. 22304, (703) 567-5873 (O), (703) 567-5876 (fax), DC Bar No. 447676. For the Defendants Alberto R. Gonzales and Wan J. Kim: JEFFREY A. TAYLOR, United States Attorney. /s/ Christy McCormick, JOHN TANNER, CHRISTY McCORMICK, SONYA L. SACKS, Attorneys, Voting Section, Civil Rights Division, United States Department of Justice, Room 7254